**In the Matter of Larry T. MILLER.**

No. 02S00-9601-DI-64.

Supreme Court of Indiana.

June 24, 1997.

---

Robert L. Thompson, Fort Wayne, for respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Respondent Larry T. Miller admits that he neglected the legal affairs of various clients, failed to adequately communicate with them about the status of their pending cases, and failed to return unearned portions of advance-paid legal fees after being discharged. The Disciplinary Commission and the respondent now agree that he should be suspended from the practice of law for his misconduct, and their *Statement of Circumstances and Conditional Agreement for Discipline* incorporating the suggested sanction is now before us for approval, pursuant to Ind.Admission and Discipline Rule 23, Section 11(c).

The respondent's admission to the practice of law in this state in 1967 confers disciplinary jurisdiction over this action with this Court. Pursuant to Count I of the Commission's *Amended Verified Complaint for Disciplinary Action,* which underlies this action, the parties agree that in early 1994, a client retained the respondent to assist her in gaining custody of her granddaughter. She paid the respondent $450 on January 21, 1994, to retain his services. The respondent later met with the client on two occasions and also spoke with a representative of the Department of Child and Family Services on the client's behalf. However, between January 21 and June 17, 1994, the respondent did not file an appearance or pleading on the client's behalf. On June 17, 1994, the client filed a request for fee arbitration with the Allen County Bar Association. After hearing, the arbitration committee found that the client was entitled to a refund of the $450 retainer.

Pursuant to Count II, the parties agree that a client hired the respondent on November 29, 1993, to handle and consolidate several criminal charges pending against the client in Allen, Wells, and Adams counties. Although the client paid the respondent a $1,000 retainer, the respondent never entered an appearance on his behalf.

As to Count III, the parties agree that sometime around 1993, a client hired the respondent to negotiate a plea agreement and represent him during a contemplated sentence modification on charges of dealing in cocaine. The client paid the respondent $600 on January 20, 1993. In addition, the client's grandmother paid the respondent an additional $500 on January 22, 1993. In February 1993, the respondent negotiated a plea agreement pursuant to which the client pled guilty and was sentenced to a prison term of six years. Approximately nine months after beginning his sentence, the client contacted the respondent regarding the filing of a sentence modification. Thereafter, the respondent failed to file a petition for sentence modification on the client's behalf.

Under Count IV, the parties agree that on March 8, 1993, a mother hired the respondent to seek a sentence modification on behalf of her son and paid the respondent a $1,200 retainer for the contemplated service. From May 10 until June 23, 1993, the mother tried several times to communicate with the respondent regarding the status of the case, but was unsuccessful in obtaining any information. After the respondent missed at

least three scheduled jail visits with the son, the mother called the respondent's office on June 23, 1993, and left word that she no longer wanted the respondent to represent her son. She instructed the respondent's secretary that she wished a refund of the $1,200 retainer she had paid.

As to Count V, the parties agree that on October 24, 1994, a client hired the respondent to defend him against a charge of driving while intoxicated, paying $750 to retain his services. After mailing the client a *Waiver of Initial Hearing* form to sign and return, the respondent entered an appearance on his behalf on November 14, 1994. The client's subsequent efforts to reach the respondent by telephone at his office were unfruitful. On January 30, 1995, the client telephoned the trial court to discover that his case was scheduled for trial on February 9, 1995. On February 7, 1995, the respondent informed the client that the trial date had been postponed until March 30, 1995, and that he had scheduled a meeting with the prosecutor to attempt plea negotiation. Further, the respondent promised his client that he would contact him the next day to advise him of the results of his negotiations with the prosecutor. Contrary to his promise, the respondent failed to contact the client on February 8, 1995. During the week of February 13, 1995, the client telephoned the respondent's office twice daily to discuss the plea negotiations. Each time, he was unable to speak with the respondent and his calls were not returned. Later, the client informed the respondent's secretary that he wished to terminate the representation. The respondent filed a motion to withdraw his appearance on February 21, 1995.

As to Count VI, the parties agree that in late February of 1995, a mother and father consulted the respondent to discuss an agreed modification of custody. The father paid the respondent $300 to handle the modification. Although the respondent asserts that he prepared and filed on March 13, 1995, an agreed entry modifying custody and reducing the father's child support obligation, the chronological case summary for the case indicates that an agreed entry was never made part of the court's record. As a result, the father continued to pay his prior child support obligation via income withholding. When the father contacted the respondent to learn the status of the modification, the respondent told him that the court had not completed the paperwork and that the respondent had completed all that was necessary on his part.

By failing to act with reasonable diligence and promptness on behalf of the clients in Counts I, II, III, IV, and VI, the respondent violated Ind.Professional Conduct Rule 1.3.[1] By failing to keep his clients reasonably informed about the status of their cases and failing to promptly comply with their reasonable requests for information, the respondent violated Prof.Cond.R. 1.4(a).[2] By failing, upon termination of representation, to refund unearned advance payment of fees in Counts I, II and IV, the respondent violated Prof. Cond.R. 1.16(d).[3] In Count VI, by failing to file an agreed entry to reduce his client's child support obligation, the respondent violated Prof.Cond.R. 3.2.[4]

The respondent and the Commission ask us to approve their agreed sanction, that being the respondent's suspension from the practice of law for not less than ninety days. On their face, the respondent's repeated in-

1. Professional Conduct Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

2. Professional Conduct Rule 1.4(a) provides:

A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

3. Professional Conduct Rule 1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practica-

ble to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

4. Professional Conduct Rule 3.2 provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

stances of client neglect and lingering retention of unearned fees evoke in us predilection for a harsher sanction. Further, as an aggravating factor, we note also that the respondent resigned from the bar of this state in 1985 after being charged with several counts of neglect of clients' legal matters and mishandling of client funds. *In re Miller*, 477 N.E.2d 882 (Ind.1985). This court granted his petition for reinstatement in 1991. *In re Miller*, 567 N.E.2d 97 (Ind.1991).

However, the present conditional agreement contains factors offered in mitigation of the respondent's misconduct. The parties agree that, during the time of the misconduct, the respondent was experiencing severe depression which impaired his ability to deal adequately with his practice responsibilities. He has since sought and obtained psychiatric counseling and medical treatment for his disorder and now asserts that he has made "significant improvement" in his ability to discharge his responsibilities. The Commission and the respondent also agree that he provided restitution to all clients who sought return of fees or who claimed damage. Because we find that the respondent's prior medical condition mitigates the severity of the misconduct, and due to our desire to encourage agreed resolution of disciplinary complaints, we accept the agreed sanction. In any future reinstatement proceeding, however, the respondent will bear a heavy burden of proof to demonstrate his professional fitness in light of his disciplinary history before this Court. *See In re Gutman*, 599 N.E.2d 604, 608 (Ind.1992) (examination of professional fitness for purposes of reinstatement following discipline involves a balancing process in which the seriousness of the misconduct is weighed against the petitioner's subsequent conduct and present character).

It is, therefore, ordered that the respondent, Larry T. Miller, is hereby suspended from the practice of law for a period of not less than ninety (90) days, beginning July 28, 1997, without automatic reinstatement thereafter.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.